IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

```
JAMES EDWARD VAN HOUTEN,       )
                               )
              Plaintiff,       )
                               )
v.                             )       No.  06-3272-MLB
                               )
CARRIE MARLETT,                )
                               )
              Defendant.       )
                               )
```

## MEMORANDUM AND ORDER

Before the court are the following:

1. Plaintiff's complaint pursuant to 42 U.S.C. § 1983 (Doc. 1);

2. Motion to Show Proof of Evidence (Doc. 9);

3. Martinez Report (Doc. 19);

4. Plaintiff's response to Martinez Report (Doc. 22);

5. Plaintiff's "Motion for Federal Court Order" (Doc. 23); and

6. Plaintiff's letter to the undersigned, Senior U.S. District Judge Sam A. Crow, "Federal B.I. Homicide Unit" and U.S. Attorneys Office (Doc. 24).

### Background

Plaintiff is an inmate of the state of Kansas serving a life term for first degree murder. Defendant Marlett is a corrections officer at the El Dorado, Kansas, Correctional Facility. She is sued in her individual capacity only.

Since 2003, plaintiff has filed four applications for writ of habeas corpus, all of which have been unsuccessful (Case Nos. 03-3138, 04-3219, 04-3316 and 05-3416). In addition, he has filed six cases pursuant to 42 U.S.C. § 1983, all but one of which have been dismissed

for various reasons (03-3208, 04-d3135, 05-3036, 05-3461 and 06-3102). Case number 05-3377 was dismissed after the Kansas Department of Corrections agreed to remit one-half of the fines owed by plaintiff to the Department of Corrections. Case number 06-3308, presently pending before Senior U.S. District Judge Sam H. Crow, is also a § 1983 case which names as one of the defendants the same defendant named in this case.

### Plaintiff's Allegations

Plaintiff alleges, in substance, that on July 17, 2006, defendant Marlett moved him from one cell to another cell where ". . . there was feces in the door (approx. 15 marble sized balls) on the toilet, in the food passage . . . ." Plaintiff claims that he "hollered" for twenty-four hours asking for cleaning supplies and on July 17, was ". . . forced to eat all contaminated food in and out of that food slot." On July 18, 2006, plaintiff admits that he was able to clean the cell with the exception of the door.

Thereafter, on July 20, 2006, Marlett ordered that the door be cleaned but apparently it was not done to plaintiff's satisfaction. Plaintiff alleges that he told Marlett "I'm not going back in that cell until you people power wash that door and clean it with bleach to kill the germs." Marlett then ordered plaintiff into the cell and plaintiff responded "fuck you!" Marlett called the "cell extraction team after which plaintiff chose to comply and go back to my cell."

Plaintiff asserts that as of August 7, 2006, his cell still had not been "power washed, cleaned with beach to kill germs or properly cleaned." Plaintiff was moved from the cell the next day, August 8, 2006.

Plaintiff filed a grievance. Marlett's response, dated July 18, 2006, states "I have instructed staff to let you clean your cell." Plaintiff appealed, without success. It would appear that he has exhausted his administrative remedies for purposes of 42 U.S.C. § 1997e(a).

Plaintiff was granted to leave to proceed in forma pauperis even though he has unpaid filing fee obligations in two previous cases. Nevertheless, even if leave has been granted, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the court to dismiss the case if it is determined that the complaint fails to state a claim upon which relief may be granted. Plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend. Coleman v. Farnsworth, 90 Fed. Appx. 313 (10th Cir. 2004). The rule of liberal construction notwithstanding, this is such a case.

### Motion for Court Order and Letter

Although their purpose is not clear, plaintiff has filed two additional submissions.[1] The first is captioned "Motion to Show Proof of Evidence that My Life is Undoubtedly in Danger and Motion to Expedite this Case to trial is a right by law. No Longer an Option." (Doc. 9). Plaintiff states:

> I'm in prison for first degree murder, by which several members of my family and friends were put into Witness Protection Program due to my Mafioso connections and the extreme roles they've played in unsolved homicides around Kansas. By which they know I'm the leader, because several of those bullets have come up with my fingerprints on them. All of them were rumored

---

[1] Plaintiff may be concerned that his case will be barred by the "3 strikes" provisions of 28 U.S.C. § 1915(g). The court has considered that statute but finds it more expedient to dismiss the case for failure to state a claim.

-3-

> to be connected to a Topeka, Kansas street Mafioso I'm the founder of called Thugg Maffia Clique.  .50-.38 caliber solid-steel bullets were marked for the sole purpose of them getting away with those murders.  Now [the Witness Protection Program] is being used for almost all of my witnesses. Yet in a illegal manner.  "They're allowing my family to take over many of the positions at KDOC-EDCF-C Facility."

Plaintiff proceeds to identify over thirty individuals who allegedly work at the El Dorado Correctional Facility under various names and titles.  Some are women plaintiff allegedly "got pregnant." Another is plaintiff's alleged "biological sister" who worked at the prison but was fired for having an inmate's baby.  Still another is plaintiff's "biological mother."  Plaintiff's cousin, uncles (one of whom supposedly killed a foreign student in 1992, with plaintiff's help) are also named.  Although it is not completely clear, plaintiff appears to allege that other relatives (or relatives by marriage) work as guards at the El Dorado facility.  According to plaintiff, his biological grandfather escaped from Alcatraz.  A member of his mother's family is "one of the head people in the Italian mafia" in New York.  Plaintiff also asserts that he is related to the warden at Leavenworth and that his big brother in the Big Brother program was a member of ". . . a Assassinating Squad" who now works for the Connecticut Department of Corrections.  He claims that the lawyer who represented him in his murder trial was also his girlfriend and that "I believe that's why I didn't get justice cause she was mad at me." This is only a partial list of the individuals who plaintiff seems to believe are out to kill him.  Plaintiff concludes the list with the following: "For all these reasons, can you not understand why my life is in danger? and why if I do not win this lawsuit I will be probably

dead by these officers sooner or later."

Plaintiff's other submission is a letter written to Senior U.S. District Judge Sam A. Crow, "Federal B.I. Homicide Unit," the U.S. Attorneys Office and the undersigned judge (Doc. 24).  The letter states:

> I tried to make it in the siplisticest [sic] formula possible .38 slugs ain't all I gave this person.  I gave him .45 Yellow-Jacket Solid Steels too.  All my prints on them.  Now the Game has turned dirty.  They turned on me, & me on them.  Now every female C.O. almost who they <u>think</u> has <u>any</u> ties with me they shoot & kill.  The Hitman has several Hitmen he run's with all of which have access to them bullets.  And they have family in EDCF-e as Unit Team pulling up all the addresses she can get more people killed.  Rachel Powell was supposed to have Been shot in 2006.  Stone in 2003, and several other since.  All of which have worked for (KDOC) at one time or another.  There is a lot of them.  I am willing to give up them names.  But I want to happen what I just asked Steve Phillips A.A.G. for.  The sooner you all Quit Playing Games, the Quicker we can stop people from being Killed.

(Doc. 24).

<u>Applicable Law</u>

In <u>Barney v. Pulsipher</u>, 143 F.3d 1299 (10th Cir. 1998), the court stated:

> In order to hold prison officials liable for violating an inmate's right to humane conditions of confinement, two requirements must be met. First, the deprivation alleged must be objectively "sufficiently serious," <u>Wilson v. Seiter</u>, 501 U.S. 294, 298, 111 S.Ct. 2321, 2324, 115 L.Ed.2d 271 (1991), depriving the inmate of "'the minimal civilized measure of life's necessities,'" <u>id.</u> (quoting <u>Rhodes v. Chapman</u>, 452 U.S. 337, 347, 101 S. Ct. 2392, 2399, 69 L.Ed.2d 59 (1981)). Second, the official must have a "sufficiently culpable state of mind," which in this context means the official must exhibit "deliberate indifference" to a substantial risk of serious harm to an inmate. <u>Farmer [v. Brennan</u>, 511 U.S. 825, 832-33, 114 S.Ct. 1970, 1976-77, 128 L.Ed.2d 811 (1994)] 511 U.S. at 834, 114 S.Ct. at 1977; <u>Wilson</u>, 501 U.S. at 297, 111 S.Ct. at 2323. Thus, the deliberate indifference standard in a prison-conditions case is a "subjective" and not an "objective"

> requirement. That is, a prison official is liable only if the "official knows of and disregards an excessive risk to inmate health and safety." <u>Farmer</u>, 511 U.S. at 837, 114 S.Ct. at 1979. It is not enough to establish that the official should have known of the risk of harm. <u>Id.</u>

<u>Id.</u> at 1310. <u>See</u> <u>also</u> <u>Smith v. Barber</u>, 316 F. Supp. 2d 992, 1028 (D. Kan. 2004) ("The Eighth Amendment does not mandate that prison officials make prisons comfortable . . . . To demonstrate the objective component, a plaintiff must show that prison officials deprived him of the "minimal civilized measure of life's necessities" . . . . Conditions that meet this standard can rise to the level of a constitutional violation if an inmate is subjected to them for an extended period of time.") (Internal citations omitted).

## Discussion

Plaintiff's allegations are insufficient to demonstrate that officer Marlett violated plaintiff's Eighth Amendment rights. Turning first to the objective requirement, the unpleasant circumstances plaintiff supposedly encountered in the cell lasted, at most, for twenty-four hours. Plaintiff's claim that food he consumed during this period was "contaminated" is conclusory. Plaintiff's contention that the door needed to be "power washed" is, at best, his opinion; it is not a fact. The court finds that plaintiff's claims are not sufficiently serious to demonstrate that he was deprived of the minimal civilized measure of life's necessities for an extended period of time.

Plaintiff's claims are not sufficient to meet the subjective requirement of an Eighth Amendment claim. Officer Marlett responded to plaintiff's "hollered" complaints after twenty-four hours and

-6-

allowed plaintiff to have supplies to clean his cell.  Plaintiff's responses to Officer Marlett when she ordered him into the cell offer considerable insight into plaintiff's attitude toward prison officials.  Plaintiff could not prevail before this court, even if he was able to prove each of the facts alleged (he has not requested a jury trial).

## Conclusion

Accordingly, the court finds that plaintiff has failed to state a claim upon which relief can be granted and this case is dismissed pursuant to the provisions of 28 U.S.C. § 1915(e)(2)(B)(ii). Plaintiff's motions (Docs. 9 and 23) are overruled.

A motion for reconsideration of this order pursuant to this court's Rule 7.3 is not encouraged.  The standards governing motions to reconsider are well established.  A motion to reconsider is appropriate where the court has obviously misapprehended a party's position or the facts or applicable law, or where the party produces new evidence that could not have been obtained through the exercise of reasonable diligence.  Revisiting the issues already addressed is not the purpose of a motion to reconsider and advancing new arguments or supporting facts which were otherwise available for presentation when the original motion was briefed or argued is inappropriate. Comeau v. Rupp, 810 F. Supp. 1172 (D. Kan. 1992).  IT IS SO ORDERED.

Dated this ___2nd___ day of March 2007, at Wichita, Kansas.

s/ Monti Belot
Monti L. Belot
UNITED STATES DISTRICT JUDGE